Filed 1/14/15  In re Alexis S. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ALEXIS S. et al., Persons Coming Under the Juvenile Court Law. | B254558 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK47686) |
| Plaintiff and Respondent, | |
| v. | |
| HEIDI V., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Carlos Vazquez, Judge.  Reversed and remanded, and affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Mother, Heidi V., appeals from the juvenile court's orders declaring her two minor children, Alexis S. (age 17) and E. S., Jr. (age 12), dependents and removing them from her custody. (Welf. & Inst. Code, §§ 300 & 361, subd. (c).)[1] She contends the court lacked sufficient evidence and it failed to determine which status, a ward or a dependent, is in Alexis' best interest. (§ 241.1.) The Department of Children and Family Services (the Department) concedes that the court failed to comply with section 241.1. Accordingly, we reverse the orders with respect to Alexis with directions to the juvenile court. However, we affirm the challenged orders as they concern E.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The petition*

The juvenile court sustained a petition alleging that mother "created a detrimental and endangering home environment for the children in that two loaded syringes containing methamphetamine were found in the children's home within access of the children. On 12/06/13, the child Alexis was arrested for Possession of a Narcotic Controlled Substance and Being Under the Influence of a Controlled Substance. Such a detrimental and endangering home environment established for the children by the mother endangers the children's physical health and safety, and places the children at risk of physical harm, damage and danger." (§ 300, subd. (b).)

The family[2] came to the attention of the Department on December 5, 2013 when a caller reported that Alexis, who was then eight months pregnant, had overdosed on methamphetamine a few days earlier and mother had taken her to a hospital. Sheriff's deputies responded the next day and found Alexis to be under the influence of methamphetamine as she had dilated pupils, rapid heartbeat and speech, was sweating profusely, and had fresh tract marks on her right wrist and left arm. The deputies found

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     Father is deceased. Stepfather is not a party to this appeal.

two loaded syringes under Alexis' mattress and a third that had been used within the previous two hours. Other drug paraphernalia were also found in Alexis' room. The deputies arrested Alexis and charged her with possession of a narcotic substance and being under the influence of a controlled substance. Alexis admitted injecting methamphetamine " 'earlier tonight in my bedroom.' " She also admitted that she has been snorting, injecting, and smoking methamphetamine about three or four times a week for two years and began smoking marijuana at the age of eight. She confirmed that the syringes under her bed belonged to her.

The children have other troubles. In August 2012, Alexis was arrested for assaulting mother and then her adult sister Natasha when the latter intervened. Alexis was declared a ward of the juvenile court (§ 602)[3] and ordered to complete anger management classes, drug testing, and to complete a year of juvenile probation. In July 2013, E. was hospitalized and given psychotropic medication for adjustment and impulse control disorders, among other syndromes.

Mother insisted she knew nothing about Alexis's drug use or that the child brought drugs into the house. Reminded that less than a month earlier, Alexis had been detained and cited by the sheriff's deputies for possession of a methamphetamine pipe and released to mother, *mother acknowledged that Alexis was supposed to be tested weekly by her probation officer. Mother also acknowledged that Alexis was supposed to be attending weekly drug awareness classes*. The social worker opined that mother minimizes her responsibility for ensuring her house is drug free, safe, and appropriate for the children.

The family has a long history of involvement with the Department. There have been *29* referrals to the Department about this family between February 2002 and January 2014 involving allegations of abuse and neglect. Five separate dependencies have been

---

[3] We granted the Department's July 29, 2014 request to take judicial notice of minute orders of the juvenile delinquency court dated April 17, 2013, July 17, 2013, and October 22, 2013, showing Alexis was declared a ward of the court.

initiated for this family for general neglect and abuse because of mother's inability to supervise the children, various safety issues in the home, domestic violence, substance abuse, mental health concerns, and the children's failure to attend school. The Department's detention report reflects a history of allegations that Alexis was using methamphetamines and marijuana and that E. was using marijuana. Numerous complaints were received by the Department about the children being out of control and running in the street all night. In July 2013, the Department substantiated allegations that "*mother is aware that 15-year old Alexis is using/abusing drugs (meth) and that the last time Alexis used-shot up meth was several days ago*. Child Alexis is under probation supervision at this time." (Italics added.)

At the time of Alexis' overdose, the family had an open voluntary family maintenance (VFM) case, and although the children had been enrolled in counseling as part of an earlier VFM case, they did not attend. In March 2013, nine months before Alexis' overdose, mother agreed at a team decision-making meeting to ensure that Alexis underwent drug rehabilitation treatment and counseling, to continue individual counseling for the children, to submit the children to drug testing, and to ensure school attendance. Mother had done none of this.

The juvenile court detained Alexis and E.

2. *Post detention*

E. strangled a child at school, without provocation. He told his foster mother he wanted to die. Moments later he threw himself down a flight of stairs. He had rage, sadness, anger, and suicidal ideation. He was admitted to a hospital and prescribed psychotropic medication for severe depression. Agitated and out of control, E. had to be restrained.

3. *The adjudication*

At the adjudication hearing, E. testified he knew what drugs were. Both mother and E. testified that they did not know Alexis was using hard drugs and that E. does not go into Alexis' bedroom.

4

The juvenile court disbelieved mother's testimony that she did not know or have a reason to know what was going on in her house and did not at least suspect her daughter had a significant drug problem. The court found "a lot of red flags for the mother." The court sustained the petition (§ 300, subd. (b)) and removed Alexis and E. from mother's custody (§ 361, subd. (c)). Mother's appeal ensued.

CONTENTIONS

Mother contends the juvenile court (1) erred by failing to comply with section 241.1 with respect to Alexis; and (2) had insufficient evidence to sustain the petition (§ 300, subd. (b)) and to order E. removed from mother's custody (§ 361, subd. (c)).

DISCUSSION

1. *Alexis falls within section 241.1 and so reversal is required with directions to the juvenile court to determine which status is appropriate for Alexis: to be a ward or a dependent of the juvenile court.*

Mother is correct that the juvenile court failed to comply with the mandatory directives in section 241.1.[4] As noted, Alexis is a ward of the juvenile court under section 602 because she committed crimes, and she also qualifies now as a dependent of the court.

"The Legislature has declared that a minor cannot simultaneously be both a dependent and a ward of the juvenile court. [Citation.]" (*In re Joey G.* (2012) 206 Cal.App.4th 343, 347.) When a child falls within the jurisdiction of the juvenile court as a ward and a dependent, section 241.1 requires that the probation department and the welfare department jointly develop a written protocol to determine which status would

---

[4] Section 241.1 states in relevant part, "Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor." (§ 241.1, subd. (a).)

5

best serve the interests of the child and the protection of society.  (*In re Joey G*., at p. 347.)  The completed report is presented with the petition to the juvenile court who must determine whether the child should be treated as a dependent child under section 300 or a delinquent child under section 601 or 602.  (*In re Joey G*., at pp. 347-348.)

The Department concedes Alexis was already a ward (§ 602) at the time of the jurisdictional hearing.  There is nothing in the record to indicate that a joint report was generated or that the juvenile court considered Alexis' dual status.  The juvenile court erred in failing to proceed according to section 241.1 and so the jurisdiction and disposition orders with respect to Alexis only must be remanded to the juvenile court to determine which status will serve Alexis' best interests and the protection of society.

2. *The evidence supports the juvenile court's orders with respect to E.*

a. *The jurisdiction order is supported by ample evidence.*

Turning to the jurisdiction and disposition orders, we conclude the juvenile court had more than sufficient evidence to declare E. a dependent pursuant to section 300, subdivision (b).

The order sustaining a petition must be supported by a preponderance of the evidence.  (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)  On appeal, we are guided by the substantial-evidence standard:  We review the record to determine whether "substantial evidence, contradicted or uncontradicted supports" the court's conclusions. (*Ibid.*)

A child falls within the jurisdiction of the juvenile court under section 300, subdivision (b) if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."  There are three elements to the definition under subdivision (b) of section 300:  " '(1) neglectful conduct by the parent in one of the specified forms [in subdivision (b), such as a parent's failure to adequately supervise or protect a minor]; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.]"  (*In re Heather A*., *supra*, 52 Cal.App.4th at p. 194.)

6

Viewing the record here as we are required (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193), it amply supports the juvenile court's finding E. is described by section 300, subdivision (b).  Deputy sheriffs found two filled syringes and a third, recently-used syringe, along with a 12-inch mirror and three razor blades lying in Alexis' bedroom, all of which drug paraphernalia Alexis admitted belonged to her.  Alexis was caught less than a month earlier for possession of a methamphetamine pipe.  Just five months before Alexis' overdose, the Department determined that mother *knew* Alexis was injecting hard drugs.[5]  Patently, mother knew about the drugs but failed to ensure that the house was drug free, which neglect put both children at substantial risk of more drug abuse and more overdoses.

Mother relies on her testimony denying or explaining away her knowledge of Alexis' methamphetamine use, and argues there is no "substantial evidence" to support the juvenile court's finding there were "a lot of red flags for the mother" that Alexis was using methamphetamine in the home.  The juvenile court specifically disbelieved mother's testimony on this point.  We have no power to second guess the trial court's credibility determinations.  (*In re Casey D*. (1999) 70 Cal.App.4th 38, 53.)

Mother argues that others who were looking after Alexis also failed to notice evidence of methamphetamine use.  Of course, what others knew is irrelevant; we are concerned with the evidence that mother knew.  There were abundant "red flags" indicating active, significant drug abuse was occurring in the house justifying the juvenile court's reasonable conclusion that mother knew or should have known of Alexis' drug abuse.  Alexis stated she had been smoking, snorting, and injecting methamphetamine *numerous times a week for two years*.  The juvenile court was entitled to disbelieve mother's testimony she did not see the track marks on her child's arms because Alexis wore long sleeves.  The child was already on probation for drug crimes.  Her probation required Alexis to test for drugs in her system and attend drug awareness classes.  This is

---

[5]     Notwithstanding mother testified that the pipe belonged to a friend, the event remains a serious red flag.

not the first time mother has had encounters with the Department concerning drug use allegations. This evidence, along with other signs, such as Alexis' erratic behavior and physical signs of drug use, amount to clear indications that Alexis was abusing drugs.

Mother insists there is no evidence of neglect on her part. To the contrary, despite her knowledge of Alexis' methamphetamine use, mother never bothered to look in her own child's bedroom. Mother never attempted to ensure that Alexis enrolled in a drug treatment program, even though she promised at a team decision meeting eight months before Alexis overdosed. If mother was testifying truthfully, then she was simply ignoring the facts. Mother's neglect clearly resulted in Alexis' overdose and clearly put E. at risk of harm.

We reject mother's argument that E. was not at risk of harm because Alexis' bedroom door was always locked. The two children shared a bathroom and E.'s own bedroom was 15 feet from Alexis' room. *Effectively, mother is arguing that she relied on Alexis – a drug abuser – to protect E. by locking her door.*

We likewise reject mother's argument that circumstances have changed and so there was no risk of harm to E. at the time of the adjudication hearing. (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 824 ["question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm"].) She reasons that by the time of the adjudication hearing, the adults appreciated Alexis' drug abuse, and as her overdose was a one-time event, "no evidence suggests Alexis would now be able to bring needles into mother's new home." Alexis is unable to bring needles into mother's house now because her doing so before caused the Department to intervene to protect the children. The Department's intervention does not absolve mother of neglectful conduct.

In any event, subdivision (b) of section 300 is written in the disjunctive: It authorizes dependency jurisdiction if "[t]he child *has* suffered, *or* there is a substantial risk that the child *will* suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been

8

left . . . ." (Italics added.) In view of the severity of harm Alexis has already suffered and the gravity of harm to E. of exposure to drug abuse and drug paraphernalia, the juvenile court had sufficient evidence from which it could conclude that E. was at substantial risk of harm from mother's neglectful failure to ensure the house was safe from drugs. " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Given mother's failure in the past to take steps to address Alexis' drug abuse, the Department need not wait until she overdoses again to protect the children.

 b. *The removal order is supported by substantial evidence.*

 The burden of proof required for the disposition findings under section 361, subdivision (c) is clear and convincing evidence. On appeal, we review the order for substantial evidence. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, fn. 4.)

 "Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, that the child would be at substantial risk of harm if returned home and that there are no reasonable means by which the child can be protected without removal. [Citations.] The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on *averting* harm to the child. [Citations.]" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917, italics added.)

 "[T]he juvenile court is directed: 'Before determining the appropriate disposition, the court shall receive in evidence the social study of the minor made by the probation officer, any study or evaluation made by a child advocate appointed by the court, and such other relevant and material evidence as may be offered.' (§ 358, subd. (b).) This statutory command envisions that the juvenile court will be provided with a broad spectrum of evidence shedding light on the circumstances of the minor and his or her family." (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183; accord, *In re N.M.* (2011) 197 Cal.App.4th 159, 170.) "In this regard, the court may consider the parent's past

conduct as well as present circumstances. [Citation.]" (*In re Cole C., supra*, 174 Cal.App.4th at p. 917.) "The court's principal concern is a disposition consistent with the best interests of the minor." (*In re Rodger H., supra*, at p. 1183.)

Here, the juvenile court had plenty of evidence that mother was aware of Alexis' ongoing abuse of drugs in the house; that this family had been the subject of dozens of previous referrals, some sustained, involving drugs in the household; and that previous attempts at voluntary family maintenance had been unsuccessful. Combined with mother's persistent failure to acknowledge, let alone address, Alexis' drug use in the home clearly necessitated removing E. from mother's custody.

Mother argues that because Alexis is under active probation orders for drug testing and treatment, the child no longer puts E. at risk of harm. The issue is whether E. is safe in mother's, not Alexis' care. Mother also contends that E. was suicidal after removal but was stable in mother's custody, and that his guardian ad litem wanted E. returned to mother's care. However, the record shows that E. had serious mental health issues before he was removed as he had been in therapy since August 2012, was hospitalized in July 2013, and was diagnosed with adjustment and impulse control disorders in August 2013. E. was not stable in mother's custody and, in his condition, even more susceptible to harm if left in her care. The removal order was not erroneous.

DISPOSITION

The portions of the jurisdiction and disposition orders declaring Alexis S. a dependent of the juvenile court and removing her from mother's custody are reversed, and the matter of Alexis S. is remanded to the juvenile court with directions to direct the probation department and the welfare department to comply with the procedures of Welfare and Institutions Code section 241.1 and the court shall determine whether Alexis S. should be treated as a dependent child or a delinquent minor.  The portions of the jurisdiction and disposition orders concerning E. S., Jr., are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KITCHING, Acting P. J.

KUSSMAN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by Chief Justice pursuant to article VI, section 6 of the California Constitution.

11